# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|                              |     |                                   |
|------------------------------|-----|-----------------------------------|
| IN RE:                       | )   | Chapter 7                         |
|                              | )   |                                   |
| MID-STATES EXPRESS, INC.,    | )   | Bankruptcy Case No. 09 B 10818    |
|                              | )   |                                   |
|              Debtor.         | )   | Honorable Bruce W. Black          |
|                              | )   |                                   |

## MEMORANDUM OPINION

Bruce W. Black, United States Bankruptcy Judge.

This chapter 7 case is before the court on the trustee's motion for authorization to (1) liquidate the employee benefit plan (the "Plan")[1] of Mid-States Express, Inc. (the "Debtor"); (2) disburse the corpus of the Plan to Plan participants; (3) pay the administrative expenses associated with liquidation and disbursement of the Plan from the corpus of the Plan; and (4) waive any distribution for Plan participants whose account balances are less than one hundred dollars. The United States Department of Labor (the "Department") objected to the trustee's motion, asserting that this court lacks subject matter jurisdiction, or in the event this court has jurisdiction, that the trustee's motion violates the Bankruptcy Code[2] and the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001 ff. ("ERISA"). In response to the Department's objections, the trustee abandoned his request to waive distributions under one hundred dollars but has pursued the remaining requested relief.

---

[1] On the petition date the Debtor was the plan sponsor of the "Mid-States Express, Inc. 401(k) Plan & Trust." The trustee states that the Debtor was also the plan sponsor of the "Defined Contribution Plan & Trust," but a closer reading of the documents shows that there is only one Plan to which all the documents apply.

[2] 11 U.S.C. § 101 ff. Any reference to "section" or "the Code" is a reference to the Bankruptcy Code unless another reference is stated.

## I.  BACKGROUND

Prior to its bankruptcy filing, the Debtor was a regional trucking company that employed over 500 individuals.  It provided service throughout the Midwest, maintaining a network of terminals.  To better care for its employees, the Debtor implemented the Plan and amended it several times.  In 2004, the Debtor started experiencing financial difficulties, which only worsened over the next few years.  Finally, on March 27, 2009, the Debtor ceased all business operations and filed a petition for relief under chapter 11 of the Bankruptcy Code.  At the time of filing, the Debtor was the plan administrator,[3] and the Plan had 157 participants, collectively entitled to $1,261,926.86.  The Debtor's case was subsequently converted to chapter 7, and the trustee was appointed.  The trustee now seeks to wind up the Plan through the current motion.

## II.  DISCUSSION

Whether this court has jurisdiction to grant the trustee's motion is a difficult question.  The case law on point is very limited, and Congress has provided little guidance as to the authority it intended to bestow upon the bankruptcy courts by enacting the section at issue.  For the following reasons, however, this court holds in favor of the Department, concluding that this court does not have jurisdiction to grant the relief requested.

**A.**

When Congress amended the Bankruptcy Code in 2005 it added section 704(a)(11) to the list of the trustee's duties.[4]  Section 704(a)(11) states in pertinent part:

---

[3]    The trustee asserts that Consulting Actuarial Group, Inc. was the designated plan administrator at the time the Debtor filed for bankruptcy.  However, the Plan documents provided that the Plan administrator must be named in the "Adoption Agreement."  That agreement names Mid-States Express, Inc. the administrator, and it does not appear to be changed by any of the three amendments.  It is likely that Mid-States remained plan administrator while employing Consulting Actuarial Group, Inc. to carry out the provisions of the Plan pursuant to Article II of the Plan.  This distinction is irrelevant, however, in the context of section 704(a)(11).

[4]    Congress also enacted sections 521(a)(7) and 1106(a)(1), which are also devoid of any real instruction.

(a) The trustee shall—

. . .

(11) if, at the time of the commencement of the case, the debtor (or any entity designated by the debtor) served as the administrator (as defined in section 3 of [ERISA])[5] of an employee benefit plan, continue to perform the obligations required of the administrator . . .

11 U.S.C. §704(a)(11).

Section 704(a)(11) came at the Department's behest after years of struggling with the problems created by "orphan plans," plans that are abandoned by the employers[6] that established them. The Department found that participants in orphan plans are "effectively denied access to their benefits and are otherwise unable to exercise their rights guaranteed under ERISA. At the same time, benefits in such plans are at risk of being significantly diminished by ongoing administrative expenses, rather than being distributed to participants and beneficiaries." Termination of Abandoned Individual Account Plans, 71 Fed. Reg. 20,820 (Apr. 21, 2006). The Department attempted to remedy this problem through a series of initiatives designed to quickly identify orphan plans and designate a fiduciary[7] to be responsible for the assets of the plan. *Id.*

---

[5] Plan administrator is defined as:

(i) the person specifically so designated by the terms of the instrument under which the plan is operated;
(ii) if an administrator is not so designated, the plan sponsor; or
(iii) in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribe.

29 U.S.C. § 1002(16)(A).

[6] ERISA terms the employers "plan sponsors." A "plan sponsor" under ERISA means:

(i) the employer in the case of an employee benefit plan established or maintained by a single employer, (ii) the employee organization in the case of a plan established or maintained by an employee organization, or (iii) in the case of a plan established or maintained by two or more employers or jointly by one or more employers and one or more employee organizations, the association, committee, joint board of trustees, or other similar group of representatives of the parties who establish or maintain the plan.

29 U.S.C. § 1002(16)(B).

[7] ERISA defines "fiduciary" as:

Frequently the fiduciary that the Department was seeking for an orphan plan was either the plan

sponsor or the administrator that the plan sponsor had designated to administer the plan.

Regardless of who the Department found or appointed as the fiduciary, the goal was to have that

person "manage, terminate, and distribute the assets of the plan." *Id.*

The Department buttressed its initiatives by backing legislation that would require the

bankruptcy trustee to fulfill the role of administrator in cases where the plan sponsor was in

bankruptcy. Dep't of Labor, Advisory Council Report, Report of the Working Group on Orphan

Plans (Nov. 8, 2002). The Department recognized plans were at high risk of becoming

abandoned when the plan sponsor filed for bankruptcy, if not before. Termination of Abandoned

Individual Account Plans, 71 Fed. Reg. 20,820. As a consequence, the language currently found

in section 704(a)(11) was introduced as part of the Bankruptcy Reform Act of 2001. S. 220,

107th Cong. (1st Sess. 2001). The proposed law sought to have the plan sponsor continue "his

fiduciary responsibilities by terminating the company's retirement plan or plans" through the

chapter 7 trustee. Dep't of Labor, Advisory Council Report, Report of the Working Group on

Orphan Plans (Nov. 8, 2002). The proposal ultimately became law as section 446(b)(2) of the

Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). Pub. L. No.

109-8, 119 Stat. 23 (2005).

---

Except as otherwise provided in subparagraph (B), a person is a fiduciary with respect to a plan to
the extent (i) he exercises any discretionary authority or discretionary control respecting
management of such plan or exercises any authority or control respecting management or
disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or
indirect, with respect to any moneys or other property of such plan, or has any authority or
responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in
the administration of such plan. Such term includes any person designated under section
405(c)(1)(B)

29 U.S.C. § 1002(21)(A).

In the context of the Bankruptcy Code, section 704(a)(11) is simply an additional duty that the trustee must perform. It is, however, quite different from the trustee's other duties because it confers non-estate responsibilities on the trustee. All of the trustee's pre-BAPCPA duties relate to the trustee's role as representative of the bankruptcy estate. *See* 11 U.S.C. §704(a). This court undoubtedly has jurisdiction to oversee the trustee's actions when he is acting in that capacity. Section 704(a)(11), however, requires the trustee to disburse assets that do not belong to the bankruptcy estate, for the benefit of persons that are not creditors. *See* M.P. Sheehan, *A Simple Solution and a Radical Change: Orphaned Employee Benefit Plans and BAPCPA*, 22 NABTalk 12 (2007). In other words, the trustee is required to administer the assets of an entity that is not in bankruptcy. Whether this court has jurisdiction over the trustee acting as the plan administrator distributing non-estate assets to non-creditors is the heart of the parties' disagreement.

**B.**

Bankruptcy court jurisdiction finds its foundation in the Constitution, which authorizes Congress to enact "uniform Laws on the subject of Bankruptcies throughout the United States." U.S. Const. art. I, § 8, cl. 4. Prior to 1898 Congress used its bankruptcy power sparingly through short-lived laws. *See* Ralph Brubaker, *On The Nature Of Federal Bankruptcy Jurisdiction: A General Statutory And Constitutional Theory*, 41 Wm. & Mary L. Rev. 743, 755-800 (2000)(discussing the history of bankruptcy jurisdiction). In 1898 Congress enacted the Bankruptcy Act (the "Bankruptcy Act"), which was the first comprehensive bankruptcy law and lasted eighty years. Bankruptcy Act of 1898, ch. 541, 30 Stat. 544 (1898)(repealed 1978). Under the Bankruptcy Act, as frequently amended, jurisdiction was quite complicated:

> The Bankruptcy Act of 1898 vested original jurisdiction over all bankruptcy matters in the United States District Courts. In turn, the district judges referred

certain matters to bankruptcy referees. There were two main types of bankruptcy matters under the Act of 1898: 'proceedings' and 'controversies.' 'Proceedings' generally involved the administration of the bankrupt's estate and were solely within the province of the bankruptcy court. 'Controversies' were collateral disputes arising out of bankruptcy proceedings. These matters involved the trustee and third parties and could be heard by either the bankruptcy court or by a non-bankruptcy court that had jurisdiction. While proceedings fell within the 'summary jurisdiction' of the bankruptcy court, controversies sometimes required the court to exercise 'plenary jurisdiction.'

*Torkelsen v. Maggio (In re Guild & Gallery Plus)*, 72 F.3d 1171, 1176 (3d Cir. 1996) (quoting Thomas S. Marion, *Core Proceedings and "New" Bankruptcy Jurisdiction*, 35 DePaul L. Rev. 675, 676 (1986)). When the bankruptcy court exercised its summary jurisdiction, it used expedited procedures and was capable of entering final judgments. *Id.* Matters that fell under the category of plenary jurisdiction could not be heard by the bankruptcy court unless the parties implicitly or expressly consented. *Id.* Consequently, a good portion of all litigation in the bankruptcy courts regarded jurisdiction. *Id.*

In 1978 Congress did away with this complex jurisdictional scheme. The Bankruptcy Reform Act of 1978 (the "Reform Act")[8] vested concurrent jurisdiction in the district court and the bankruptcy court over all civil proceedings arising from or related to cases under the Bankruptcy Code. Marion, 35 DePaul L. Rev. at 678 (citing 28 U.S.C. § 1471(c) (repealed 1984)). This scheme allowed bankruptcy courts to enter final judgments in matters that would have been plenary under the Bankruptcy Act. *Id.*

In *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982), the U.S. Supreme Court held that the new bankruptcy court jurisdictional scheme was unconstitutional. The Court held that a bankruptcy court could not enter a final order on a substantive claim created independent of, and antecedent to, the bankruptcy case. *Id.* at 84.

---

[8]    Referred to substantively as the "Bankruptcy Code."

Congress thereafter amended the jurisdiction of the bankruptcy courts through the Bankruptcy

Amendments and Federal Judgeship Act of 1984 (the "BAFJA"). *See* Pub. L. 98-353, 98 Stat.

333 (1984)(codified at 28 U.S.C. § 151 *ff.*).  Pursuant to the BAFJA:

> the district courts are vested with original and exclusive jurisdiction over all cases
> under title 11, and original and concurrent jurisdiction over all proceedings arising
> under or related to title 11.  The critical difference between the [Reform Act and
> the BAFJA] is that under the [BAFJA], bankruptcy courts do not exercise all
> jurisdiction vested in the district courts.  Instead, the bankruptcy court is
> established as a unit of the district court to which the district court may refer any
> or all cases and proceedings.

*Torkelsen*, 72 F.3d at 1177 (quoting Marion, 35 DePaul L. Rev. at 681).  The BAFJA reinstitutes

much of the jurisdictional structure originally found in the Bankruptcy Act by vesting authority

to hear bankruptcy cases in the district court.  28 U.S.C. § 1334(a).  The district court is

authorized to refer the cases to the bankruptcy court.[9]  28 U.S.C. § 157(a).  Once a case is

referred, bankruptcy court jurisdiction is divided into core proceedings and non-core proceedings

that are "related to" the bankruptcy case.[10]  28 U.S.C. § 157(b) and (c).  Core proceedings are

defined as proceedings "arising under" title 11 and proceedings "arising in" a case under title 11.

28 U.S.C. § 157(b)(1).  Bankruptcy courts have the authority to enter final orders in core

proceedings.  *Id.*  Bankruptcy courts also have jurisdiction to hear non-core proceedings that are

"related to" a case under title 11.  28 U.S.C. § 157(c)(1).  In non-core, "related to," proceedings,

bankruptcy courts may not enter final judgments.  *Id.*  Instead, they submit proposed findings of

fact and conclusions of law to the district court for final determination.  *Id.*  It is, therefore,

necessary to distinguish between core and non-core, "related to," jurisdiction.

1.

---

[9]      United States District Court for the Northern District of Illinois Internal Operating Procedure 15 refers
bankruptcy cases and proceedings to the bankruptcy judges of this district.

[10]      The term "proceeding" encompasses any matter that occurs within a case.  1 Collier on Bankruptcy ¶
3.01[3][b].

One type of core proceeding is one "arising under" the Bankruptcy Code. A proceeding

"arises under" the Bankruptcy Code if it "invokes a substantive right provided by Title 11."

*Diamond Mortgage Corp. of Ill. v. Sugar*, 913 F.2d 1233, 1239 (7th Cir. 1990); *Wood v. Wood*

*(In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987). This means that the Bankruptcy Code, in a strong

sense, is the source of the right or remedy, rather than just the procedural vehicle for the

assertion of a right conferred by some other body of law. *In re U.S. Brass Corp.*, 110 F.3d 1261,

1268 (7th Cir. 1997).

The trustee argues that this matter meets the criteria required for "arising under"

jurisdiction because the express obligation under section 704(a)(11) is analogous to situations

where the Bankruptcy Code is clearly the source of the substantive right (*e.g.* preference or

fraudulent transfer claims). The trustee's argument is not well taken. Sections 547 and 548

clearly create the right to avoid preferences and fraudulent transfers under the Bankruptcy Code.

*See* 11 U.S.C. §§ 547-48. Section 544(b) allows the trustee to pursue the same types of claims

under state law. 11 U.S.C. § 544(b). Although section 544(b), when taken alone, does not

appear to be a substantive right created by the Bankruptcy Code, all of the fraudulent transfer

and preference sections work together to "arm the bankruptcy trustee with the avoidance powers

of state, as well as federal [law]." *Perkins v. Petro Supply Co. (In re Rexplore Drilling)*, 971

F.2d 1219, 1222 (6th Cir. 1992). Thus, state law avoidance power is merely part and parcel of

the substantive right to avoid certain transfers created by the Bankruptcy Code. *See Perkins*, 971

F.2d at 1222 (holding that "state preference law is an adjunct to, and supplemental of, those

powers specifically provided for in the Bankruptcy Code which enable the trustee to avoid

certain transfers"). When the trustee invokes his right to avoid a transfer under any of the

avoidance sections, the Bankruptcy Code carefully delineates the circumstances under which

federal bankruptcy proceedings are to be initiated. *Sherwood Partners, Inc. v. Lycos, Inc.*, 394 F.3d 1198, 1205 (9th Cir. 2005). Thus, the substantive right to avoid transfers is, in a strong sense, created by the Bankruptcy Code.

It cannot be said that section 704(a)(11) invokes a right created by the Bankruptcy Code in the same strong sense. It is not adjunct to, or supplemental of, any substantive right created by the Bankruptcy Code. Section 704(a)(11) stands alone in putting the trustee in the shoes of the ERISA plan administrator. The plan administrator's rights and obligations are found in ERISA. The Bankruptcy Code does not alter those rights and obligations. Therefore, when the trustee "asks this court to rule that the requested relief complies with the trustee's statutory duties" the court must to look to ERISA to determine whether the trustee's proposed actions actually do comply. Trustee's Reply filed March 24, 2010, pg. 11 [Doc. 283]. Accordingly, ERISA provides the substantive rights at issue here.

*In re AB & C Group*, 411 B.R. 284 (Bankr. N.D.W.Va. 2009), and *Allard v. Coenen, et al. (In Re Trans-Industries)*, 419 B.R. 21 (Bankr. E.D. Mich. 2009), support this courts conclusion that it lacks jurisdiction. In both cases, as in this case, the trustees were acting subject to section 704(a)(11). In *In re AB & C Group* the court held that sections 327, 330, and 365 did not support the trustee's motion. This left section 704(a)(11) as the sole purported source of "arising under" jurisdiction. The court held that ERISA governed whether the requested relief would be allowed and, accordingly, the matter did not "arise under" the Bankruptcy Code.

The *In re Trans-Industries* court followed the same reasoning when resolving an adversary proceeding in which an ERISA claim was asserted. The court concluded that it did not have "arising under" jurisdiction because the cause of action was "created and [would] be determined by federal non-bankruptcy law." *In Re Trans-Industries*, 419 B.R. at 30. This court

-9-

holds, consistent with those courts, that section 704(a)(11) does not confer "arising under" jurisdiction on this court because the substantive rights at issue are provided by ERISA and not the Bankruptcy Code.

**2.**

The other type of core proceeding is one "arising in" a case under the Bankruptcy Code. The concept of proceedings "arising in" a bankruptcy case is less clearly defined than those that "arise under" the Bankruptcy Code. *In re Wood*, 825 F.2d at 97. However, many authorities indicate that "arising in" jurisdiction is a residual category of proceedings that do not fit within the definition of "arising under" but are still core proceedings because they deal with matters inherent to the bankruptcy process. *See* 1 *Collier on Bankruptcy* ¶ 3.01 (Alan N Resnick & Henry J. Sommers eds., 16th ed.); *In re Wood*, 825 F.2d at 97; *Royal Indem. Co. v. Admiral Ins. Co.*, No. 07-2048(RBK), 2007 WL 4171649 (D.N.J. Nov. 19, 2007) (stating "arising in" claims are those intrinsically limited to the bankruptcy context). Consequently, most cases invoking "arising in" jurisdiction create very little controversy. Darrell Dunham, *Bankruptcy Court Jurisdiction*, 67 UMKC L. Rev. 229, 243 (1998).

Courts have defined "arising in" proceedings as proceedings that due to "their [legal] nature, not their particular factual circumstance, could only arise in the context of a bankruptcy case." *Stoe v. Flaherty*, 436 F.3d 209, 218 (3d Cir. 2006); *Royal Indem.*, 2007 WL 4171649 (holding that the legal nature of the proceeding, and not its factual context, is dispositive). As such, they would have no practical existence outside of bankruptcy. *In re Diagnostic Intern., Inc.*, 257 B.R. 511, 515 (Bankr. D. Ariz. 2000); *In re Poplar Run Five Ltd. Partnership*, 192 B.R. 848, 857 (Bankr. E.D.Va. 1995); *Nelson v. Welch (In re Repository Techs., Inc.)*, 601 F.3d

*710, 719* (7th Cir. 2010). For example, "the filing of a proof of claim or an objection to the discharge of a particular debt" "arise in" a bankruptcy case.[11] *In re Wood*, 825 F.2d at 97.

The trustee believes that this proceeding meets the requirements for "arising in" jurisdiction for two reasons. First, he argues that this proceeding could only arise in the bankruptcy context because the trustee, a creature of the Bankruptcy Code, is merely trying to fulfill one of his statutory duties. However, the trustee has many duties under the Bankruptcy Code that require him to reach outside of bankruptcy law.[12] The mere fact that the trustee is the party asserting or defending a right does not mean that the proceeding could only "arise in" a bankruptcy case. *See Torkelsen*, 72 F.3d at 1182. The trustee does not carry around "arising in" jurisdiction with him. *Id.*

Second, the trustee argues that "[b]ut for § 704(a)(11) the trustee would not be seeking the requested relief because the trustee would not be required to administer the Debtor's Plan." Trustee's Reply filed March 24, 2010, pg. 9 [Doc. 283]. However, the "but for" test that the trustee relies upon is not well taken because, if applied literally, it would expand the bankruptcy court's jurisdiction beyond the constitutional limits under *Marathon*. 1 Collier on Bankruptcy ¶ 3.01; *In re Poplar Run Five Ltd. Partnership*, 192 B.R. 848, 857 (Bankr. E.D.Va. 1995); *Marotta Gund Budd & Dzera LLC v. Costa*, 340 B.R. 661 (D.N.H. 2006). Under such a test even a defamation case could be a core proceeding if it would not have arisen "but for" the bankruptcy case. *Marotta*, 340 B.R. at 667. The problem with such a test is that it takes into account the

---

[11]    Additional administrative matters that fall under "arising in" the bankruptcy case are "allowance and disallowance of claims, orders in respect to obtaining credit, determining the dischargeability of debts, discharges, confirmation of plans, and like matters." 1 Collier on Bankruptcy ¶ 3.01. All of these proceedings must be handled within the bankruptcy case.

[12]    For example, the trustee has a duty under section 704(a)(5) to object to improper claims. Such claims may be improper because of state law. 11 U.S.C. § 502(b)(1). The trustee also has the duty under section 704(a)(1) to collect and reduce to money the property of the estate. In order to complete this duty the trustee may be required to sue a third party invoking a state law right under section 323. *See* 1 Collier on Bankruptcy ¶ 704.03.

factual circumstances that lead to the proceeding. The factual circumstances, however, are irrelevant when determining "arising in" jurisdiction. *Velocita Corp. v. Constr. Mgmt. & Inspection, Inc. (In re Velocita Corp.)*, 169 Fed. App'x 712, 715 (3d Cir. 2006). It is the legal nature of the proceeding that matters. *Id.* Therefore, this court must determine the legal nature of the motion to determine if "arising in" jurisdiction exists.

The closest analogy to the situation before the court is when the trustee objects to a claim under sections 502(b)(1) and 704(a)(5). "Arising in" jurisdiction clearly exists over such objections. The trustee has a duty to object to improper claims. 11 U.S.C. § 704(a)(5). Claims are improper if they are unenforceable against the debtor and property of the debtor under applicable law. 11. U.S.C. § 502(b)(1). Thus, section 704(a)(5) creates a statutory duty to invoke the debtor's non-bankruptcy rights. Objections to claims can be, however, divided into two components: the ministerial proceeding to allow or disallow the claim, which is inherent in the bankruptcy process, and the underlying non-bankruptcy law that makes the claim unenforceable against the debtor. *St. Vincent's Hosp. v. Norrell (In re Norrell)*, 198 B.R. 987, 994 n.5 (Bankr. N.D. Ala. 1996). Due the legal nature of the ministerial proceeding to allow or disallow a claim, it can only "arise in" the bankruptcy context. *Id.* To the contrary, the underlying action to adjudicate the non-bankruptcy rights of the parties could be brought in state court, and can only be brought in bankruptcy court, if at all, under "related to" jurisdiction, discussed below.

Here, as with objections to improper claims, the trustee seeks to act pursuant to one of his statutory duties defined in 704(a). However, it appears that the trustee does not simply want this court to exercise one of its ministerial functions inherent in the bankruptcy process. Instead, he would like this court to adjudicate underlying non-bankruptcy rights governed by ERISA and

- 12 -

ERISA regulations as promulgated by the Department, 29 C.F.R. 2509 *ff*. As is true with

objections to claims, determining underlying non-bankruptcy rights does not come within

"arising in" jurisdiction. The legal nature of such rights is outside of bankruptcy.

**3.**

The final type of proceeding over which bankruptcy courts have jurisdiction is a non-core

proceeding that is "related to" the bankruptcy case. "Related to" jurisdiction is the most

expansive of the three types. The circuits do not agree on the definition of proceedings "related

to" cases under title 11. Most circuits have adopted the broad *Pacor* test, which "hold[s] that

whenever a proceeding 'could conceivably have any effect on the bankruptcy estate, it is 'related

to' a case under Title 11.'" *In re Fedpak Sys.*, 80 F.3d 207, 210 (7th Cir. 1996) (quoting *Pacor,*

*Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir. 1984)). The Seventh Circuit, however, "has

articulated a more limited and, … more helpful definition of the bankruptcy court's 'related to'

jurisdiction." *In re Fedpak Sys.*, 80 F.3d at 210. In this circuit the proceeding must affect the

amount of property for distribution from the estate or the allocation of property among creditors.

*Id.* at 214. Merely speculative or hypothetical affects on the estate's property or allocations of

the estate's property are not enough to invoke "related to" jurisdiction. *Id.* The effect does not,

however, have to be absolutely certain. If the proceeding is likely to affect the debtor's estate the

court has "related to" jurisdiction. *Black v. U.S. Postal Serv. (In re Heath)*, 115 F.3d 521, 524

(7th Cir.1997).

The trustee offers two examples of how this proceeding will affect the estate's property

or allocation thereof. First, the trustee argues that the estate's potential liability to the Plan

participants is approximately $1.25 million. So far only four Plan participants have actually filed

claims against the estate totaling $25,916.67. If the trustee is authorized to liquidate the plan and

- 13 -

disburse the corpus to the Plan participants then most, if not all, of the actual claims would be satisfied and the liability eliminated.

Although to the lay person the Plan and the Debtor may seem like the same entity, they are not. Any Plan obligation for the amounts that it owes the participants is just that, a Plan obligation. *See* 29 U.S.C. § 1132(d)(1). Plan obligations are separate from the estate's obligations and are improper claims against the estate. It is the trustee's duty to object to improper claims. 11 U.S.C. § 704(a)(5). Therefore, to the extent that these claims are improper, they cannot affect the estate's property.

That is not the crux of the trustee's argument, however. The trustee asserts that the estate is liable to the Plan and its participants for the $1.25 million because of the Debtor's role as plan administrator. An order authorizing the trustee to disburse the corpus would, he argues, greatly diminish that potential liability. However, even in the event that the trustee did not disburse the plan funds, the estate would not be affected. The trustee has the duty as plan administrator to administer the Plan pursuant to ERISA and the plan documents. If the trustee fails to discharge his duty by not disbursing the funds, then the participants can sue to recover those benefits. 29 U.S.C. § 1132. But such a suit is equitable, not legal; and the relief consists of an order directing the plan administrator to pay the benefits. *Hunt v. Hawthorne Assocs., Inc.*, 119 F.3d 888, 906-07 (11th Cir. 1997). Extracontractual or punitive damages are not allowable in ERISA claims. *Harzewski v. Guidant Corp.*, 489 F.3d 799, 804 (7th Cir. 2007). The benefits would be paid from the plan and not from the estate. Thus, the trustee could be forced to pay the $1.25 million, but only from the Plan, not from the estate.

The trustee also points to the Debtor's fiduciary duty to the Plan participants as a potential source of liability for the $1.25 million. However, put generally, the estate is only

- 14 -

liable to the Plan participants for breach of fiduciary duty under a defined contribution plan[13] if

"the employer assumes responsibility for making overall plan investment decisions" and "it

breaches its ERISA prudent investment and asset diversification duties." N. Peter Lareau, 6

Labor and Employment Law § 150.03 (Matthew Bender 2010). If the prudent investment duty

has been breached, then the liability of the employer is calculated as the difference between the

amount in the account and the amount that would be in the account if the breach of fiduciary

duty had never occurred. *See Harzewski v. Guidant Corp.*, 489 F.3d 799, 804 (7th Cir. 2007). If

the employee is responsible for making the investment decisions then the employer does not

have the prudent investor duty.[14] Lareau, Labor and Employment Law § 150.03. Therefore,

whether the corpus is disbursed or not, the estate's liability stays the same.[15] Accordingly, the

affect on the estate is illusory.

Second, the trustee asserts that the estate is potentially liable to the Plan for the

administrative costs of liquidating and disbursing the Plan's assets. The motion would obviate

that liability by authorizing the trustee to pay the administrative expenses from the Plan. It

appears from the Plan documents that the trustee has the choice to have either the Plan or the

---

[13]     A "defined contribution plan" is "a pension plan which provided for an individual account for each
participant and for benefits based solely upon the amount contributed to the participant's account, and any income,
expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such
participant's account." 29 U.S.C. § 1002(34).

[14]     The Plan documents appear to make the participants responsible for making their own investment
decisions. However, to the extent that the individuals do not make their own decisions, Terry Hartmann and Bruce
Hartmann are in change of making the decisions as Plan trustees. The Debtor's fiduciary duty therefore is extremely
limited.

[15]     For example, assume here that the Debtor was making the investment decisions and breached his duty. But
for his breach, the Plan would have held $3 million. In that case the liability would be $3 million less the $1.25
million or $1.75 million. Whether or not the $1.25 million is disbursed would not change that amount.

estate pay the expenses associated with administering the Plan.[16]  Accordingly, the trustee asserts

this situation is akin to where the Debtor and a non-debtor third party are co-obligors.  If the non-

debtor third party satisfies the obligation then that most definitely changes the distribution and

likely the amount of estate property.  However, the Department asserts that ERISA would allow

the trustee to pay the administrative expenses from the Plan even without an order, and therefore

this motion, whether denied or granted, cannot affect the estate.  The court agrees with the

Department.  As the trustee pointed out in his motion, the Plan has been terminated by operation

of law.  Its termination allows the plan administrator to make the requested distributions to Plan

participants.  The Plan also provides for the administrative expenses to be paid by the Plan.

Thus, the trustee is not requesting this court to authorize anything that he cannot already do.  The

trustee's requested order can have no affect on the amount of estate property or the allocation

thereof because it does not change the trustee's abilities.[17]  Accordingly, this court lacks non-

core "related to" jurisdiction.

## CONCLUSION

The trustee's motion requesting authorization to liquidate the Plan, disburse the corpus to

Plan participants, and pay administrative expenses from the Plan is DENIED.  This court does

---

[16]     Under the Plan, Mid-States Express, Inc. is the "Company," "Named Fiduciary," and "Administrator of the Plan."  Accordingly § 2.2, Article II, Administration, reads:

> [Mid-States Express, Inc.] may employ legal counsel, accountants, consultants, agents, and clerks and purchase other services as it determines are reasonably necessary to carry out the provisions of the Plan. [Mid-States Express, Inc.] will pay the fees, charges or other costs for these services. [Mid-States Express, Inc.] may, upon notice to [Mid-States Express, Inc.], shift the costs for these services to the Plan.

[17]     The Department asserts that the trustee merely seeks a comfort order.  The trustee does not object to that assertion.  This court does not see how a comfort order could ever, by definition, fit within "related to" jurisdiction.  Comfort orders "merely identify and reiterate what has already occurred by operation of law." *In re Hill*, 364 B.R. 826, 828 (Bankr. M.D. Fla. 2007).  Therefore, either the affect on the estate's property has already occurred or it has not occurred and a comfort order will not change that.  The point of such an order is to give the moving party comfort by cloaking them in judicial immunity.  *Id.*  In the end that is what the trustee truly seems to be after.

-16-

not have the requisite subject matter jurisdiction to grant the relief requested. This is not a core

proceeding as it does not "arise under" or "arise in" this bankruptcy case. It also cannot "relate

to" this bankruptcy case because the outcome does not affect the estate's property. A separate

order will be entered consistent with this opinion.

DATED:  July 2, 2010                          ENTERED:

                                              _____
                                              Hon. Bruce W. Black
                                              United States Bankruptcy Judge